UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   05-24079-BKC-PGH

In Re:

LINDA JANE GAUL,

        Debtor.

_____/

**ORIGINAL**

MOTION BY CREDITORS DWIGHT H. MATLOCK AND LINDA
McVEIGH MATLOCK FOR RELIEF FROM STAY (13)

November 28, 2005

The above-styled cause came on for hearing before the HONORABLE PAUL G. HYMAN, JR., one of the Judges of the United States Bankruptcy Court, in and for the Southern District of Florida, at 299 East Broward Boulevard, Fort Lauderdale, Broward County, Florida on Monday, November 28, 2005, commencing at or about 9:30 a.m., and the following proceedings were had:

Reported By:  Anna M. Meagher

OUELLETTE & MAULDIN COURT REPORTERS, INC. (305)358-8875

APPEARANCES:


NEMIA SCHULTE, ATTORNEY AT LAW
on behalf of the Debtor.


LASKY, BIGGE & RODRIGUEZ, by
SUSAN D. LASKY, ATTORNEY AT LAW
on behalf of Dwight and Linda Matlock.


STEVEN SIMMS, ESQUIRE
State court counsel on behalf of the Matlocks.


- - - - - -

THE COURT:  G-A-U-L, Gaul.

Come on up, come on, hurry up.

MS. LASKY:  Susan Lasky on behalf of Mr. and Mrs. Matlock.

MS. SCHULTE:  Nemia Schulte on behalf of Linda Gaul, the debtor.

MR. SIMMS:  Your Honor, Steve Simms.  Good morning.  I'm here on behalf of the Matlocks.  I represent them in the state court proceeding.

THE COURT:  Okay.

MS. LASKY:  Good morning, your Honor.  Susan Lasky on behalf Mr. and Mrs. Matlock.

Your Honor, we're here this morning on a motion for relief from stay filed by the Matlocks.  They are seeking to enforce a contract -- or actually they are seeking to enforce a state court settlement agreement that was reached with respect to the debtor's homestead.

Before this case was filed, the parties --

THE COURT:  Wait.  Pre- or post-petition settlement?

MS. LASKY:  The settlement was entered into prepetition.

THE COURT:  Okay.

MS. LASKY:  Prior to the petition date the parties had entered into a contract to purchase the

debtor's homestead. This was a negotiated transaction. There was some going back and forth. My clients say there was pressure on them to give the debtor an offer right away or she would list the house with a broker. They feel that they complied. They provided her with a contract. They gave her 24 hours to review the contract, show it to a lawyer. There was some negotiation over the purchase price. The contract was executed, and subsequent to that time, it appears the debtor just simply changed her mind and didn't want to sell her house.

This resulted in a state court complaint for specific performance, Count I, and Count II, damages. The state court judge ordered the parties to go to arbitration. This was an evidentiary proceeding. My clients, the Matlocks, showed up with five witnesses and were prepared to put on their evidence regarding the contract. I believe the debtor showed up with her witnesses.

Before the proceeding commenced, the arbitrator suggested that the parties try to settle, so they left the room and spent hours and hours negotiating a settlement agreement. I've attached a copy of the transcript of the proceedings to my motion for relief from stay. The settlement was an announced at the end of

the proceeding on the record in front of the arbitrator. This wasn't just a conversation.  It was the announcement of a settlement.

THE COURT:  I understand.

Were there obligations on both sides of the settlement agreement?

MS. LASKY:  The settlement agreement -- I don't believe that there were future performance required on each side of the agreement.  What the agreement said -- their was an obligation to pay.  The debtor had the choice of either paying the Matlocks or agreed to, in the settlement, either pay the Matlocks $200,000 by a date certain, July 14th, I think it was the 14th or 11th, or alternatively she agreed to the specific performance count of the complaint and she would sell them the house for their offer and purchase price -- or agreed purchase price of $860,000.

Rather than pay the $200,000, the debtor filed a petition in bankruptcy, so it's my -- and the house was exempted, and we waited for the exemption period to pass, so we're dealing with a piece of property that is not in the estate, and now the Matlocks would like to go back to state court and enforce the settlement and close on the purchase of the house.

I researched the issue as to whether or not

these contracts are executory, and I found a case that is pretty close. In this case -- this is the Kendall Grove Joint Venture case, and in the case the court found that -- in this case there had actually been a judgment for specific performance, so in this case, the court ruled that the transfer of title in exchange for the purchase price was just a ministerial act, not the same as an executory-type contract, such as one for personal services or a franchise agreement that required ongoing performance into the future, and so it's my position that the terms of this case would control. This isn't an executory contract. It's simply a right to specific performance.

We've done the research. I have case law. Settlements are not required to be in writing to be enforceable, and we're quite simply looking to go back to state court and enforce the terms of the settlement agreement, which would require the debtor to sell her homestead. We are not looking for any money damages from the debtor or to try to -- or any action against her personally. We're quite simply seeking to enforce our rights against a property that's exempt, and I would argue is really not even subject to the jurisdiction of the Court at this point.

THE COURT: So as I understand the settlement

agreement, what I call the contract, you had the obligation to buy the property, the debtor had the obligation of either transferring title or giving your client $200,000?

MS. LASKY:  That's correct.

THE COURT:  And if she pays you the $200,000, you didn't have to buy --

MS. LASKY:  Or she didn't have to sell the property.

THE COURT:  Sell the property.

MS. LASKY:  Correct.

THE COURT:  Why is that not executory when you add in the obligation of the debtor to pay you the $200,000?

MS. LASKY:  The case that I'm reading -- well, number one, the debtor didn't even treat the contract as executory.  The debtor just treated it as a claim for damages in her schedules.  She didn't list it as an executory contract.  Number two --

THE COURT:  So you're saying judicial estoppel applies as to that issue.

MS. LASKY:  Correct, number one.

Number two, this case that I'm reading, the Kendall Grove Joint Venture case is pretty clear that under the Countrymen definition, you're really requiring

performance on both sides, and just issuing a title in exchange for a payment is not the type of performance that the statute contemplates. The statute doesn't contemplate creating new breaches. The statute contemplates an actual future performance, more in the line of that required under franchise agreements, leases, where the performance is ongoing.

THE COURT: No, I understand that.

I think what's unique here is her obligation to pay you the $200,000 in exchange of not transferring title. That's the unique issue.

MS. LASKY: That was a settlement.

THE COURT: I understand.

MS. LASKY: She had the opportunity to pay, and I would just take the position that if you read what they put on the record at the settlement, it seems to me that it was a choice. She could either pay or transfer title, and in my opinion, when she filed the bankruptcy, she made a choice. She decided she would rather not pay and now the obligation -- it was when she filed that the obligation to close on the sale of the property arose.

THE COURT: Response?

MS. SCHULTE: Good morning, your Honor.

Your Honor, we believe this is a backdoor attempt to circumvent the debtor's homestead exemption.

OUELLETTE & MAULDIN COURT REPORTERS, INC. (305)358-8875

When we had a 341 hearing, 30 days thereafter there was no objection to her right for exemption, so we believe, number one, this is to circumvent that right to her exempt property.

But more importantly, your Honor, we also believe that this is couched under the terms of some type of motion for an objection to discharge or a complaint to determine dischargeability.

They have not provided any type of legal argument whatsoever as to why the underlying claim which is the specific performance here should not be discharged, and I had spoken with Ms. Lasky about this. It appears that they are confusing the term "claim" and "debt" to be synonymous. However, in the legislative history of 101-5, which defines of term "claim," it specifically provides that the definition also includes a claim -- the definition also includes a claim to an equitable right of performance that does not give rise to right of payment.

So we have a situation here where basically we have a claim. We filed bankruptcy. The time period to make any objections to that claim have come and gone. They have not provided any reason as to why this should not be discharged under 727, and if they do so now, frankly, it's too late. Also she had declared this

property as exempt, and they also have not filed any objections to her claim of exemption.

But regardless of that, we do have defenses as not just simply changing her mind. One of the defenses that we had in the state court proceeding was that the Matlocks had failed to provide a letter of commitment pursuant to the contract, so that was part of the reason why my client did not close on this, but regardless, your Honor, we are in a situation right now that we had filed for bankruptcy --

THE COURT: Stop.

MS. SCHULTE: Okay.

THE COURT: Why have you not listed this as an executory contract?

MS. SCHULTE: Because we did not claim it as an executory contract, simply from the fact that --

THE COURT: You don't believe it's an executory contract?

MS. SCHULTE: At the time we filed, we did not believe it was an executory contract, that's correct.

THE COURT: Okay. You're still not asserting it's an executory --

MS. SCHULTE: Well, after careful consideration, it appears to be an executory contract. At the time we filed it, it did not appear to be an

executory contract.  When I spoke to Ms. Lasky she had made it clear it was an executory contract, so now she has somewhat changed her mind.

When I've done the research specifically as to 365(j) which deals with executory contracts with respect to sale of property, the Code is very specific that the buyer who is not in possession of the property only has a lien up to the amount that they paid into the property. The buyers here, the only amount that they paid was their deposit, which has always been retained by the law firm of Mrs. Lasky, so we will be more than happy to return that, but, yes, it does -- to some extent can be argued that this is an executory contract, and at that point, then 365(j) does not apply.

The case that Ms. Lasky refers to as Kendall versus Grove that really does not apply here, and I am somewhat familiar with that case.  In that case there was a court judgment.  There was a specific order telling the debtor to sign over the deed to the seller -- to the buyer, but that's not the case here, your Honor.

THE COURT:  Okay.  Thank you.

Ms. Lasky?

MS. LASKY:  Judge, the problem I have with the executory contract argument is the debtor didn't disclose it as an executory contract on her schedules.  If she

OUELLETTE & MAULDIN COURT REPORTERS, INC. (305)358-8875

had, then you've got issues regarding whether this property was indeed her homestead.  If you don't intend to remain, do you have a homestead?  Those issues were kept from the creditors.  They were kept from the trustee.  She chose to treat this as a claim.

THE COURT:  Is this contract listed anywhere in the schedules?

MS. LASKY:  It is not.

MS. SCHULTE:  The claim is.

MS. LASKY:  Just the claim to the amount, the $200,000, and as I stated, we're just quite simply looking -- in my opinion, the day she filed the bankruptcy petition that was the trigger of the settlement agreement.  She triggered the settlement the day she filed, because she made a choice.  Under our settlement she had two choices, she could pay or sell.

Your Honor, we're going to give the debtor, my clients are going to give the debtor $860,000, the amount of money that she requested from them, her -- they met her offer.  They accepted.  I don't think that -- if you could just change -- I mean, what good are contracts if you can just change your mind.  She says in her pleadings that she agreed to settle it, she changed her mind.  It says in her pleadings.  She agreed to settle.  The settlement, she agrees on the record, she says not once,

but twice, "I agree, I agree."  She was asked twice.  She was asked specifically.  She agreed to sell this piece of property to my clients.  I don't see -- it was a settlement announced on the record.  If that doesn't have any meaning or if people aren't held to live up to their agreements, they can just change their mind, then they aren't any good, so basically that's what we are here today for, only stay relief as against the property itself, not for relief against the debtor in any way.  We're not seeking any type of monetary relief against her.  If you would like to see the case that I cited, your Honor, that we're discussing, I have a copy.

THE COURT:  I'm very familiar with that.

MS. SCHULTE:  Your Honor, I have a problem with Ms. Lasky's argument, because we go back down to this is a claim, and why -- if the Court sends this back to state court, then basically you're saying that this claim is not dischargeable and should not be included in the bankruptcy.  This is a claim for specific performance.  There is nowhere under 727 or any other arguments that Ms. Lasky has provided that would allow this claim to be basically set aside in bankruptcy, and by doing that, by sending this matter back to state court, that's what this Judge is, in essence, doing, setting aside a claim.

Ms. Lasky says what's the purpose of agreements

if you're not allowed to honor them?  Your Honor, this is Bankruptcy Court.  A lot of people agree or enter into agreements to pay back credit cards, but yet they file bankruptcy to alleviate or to get rid of that promise to pay, and that's basically the issue that I want this Court to focus on.  This is a claim.

Why is this claim not considered dischargeable?  Why should it be allowed?  If that's the case, why won't you allow Visa or MasterCard to go forward in state court as well on a claim.  Debtors in situations like that also make promises to pay back on the credit card companies, and that is what our problem is with this, your Honor.  Also --

THE COURT:  They are not seeking a monetary claim against you, ma'am.

MS. SCHULTE:  I know this is a claim for specific performance, but it's simple -- it's clear that this is a claim, and why should this claim not be part of -- why should this claim be not dischargeable?

THE COURT:  That's not the issue.  The issue is whether it's an executory contract and whether --

MS. SCHULTE:  If it's an executory -- I'm sorry.

THE COURT:  If it's not, there's certain results.  If it is an executory contract, there's other

results.

MS. SCHULTE: Okay. The other thing that we also have an issue with here, your Honor, is the fact that we had claimed this property as exempt, and the reason why I'm bringing this up is because the contract that provided for, I believe, 865,000, this property is worth well over that.

THE COURT: What does exemption have to do with it? The exemption has nothing to do with this, because a person can voluntarily transfer their exempt property. The fact that she claimed it as exempt is a red herring.

MS. SCHULTE: I understand. We just -- my client is here, your Honor. This is her only home. What was said before is not completely true, but we don't want to get into that unless you would prefer to have that. We do have defenses here to this claim, but, again, your Honor, this is a claim that basically should either be discharged, and if it is an executory contract, then it's limited under 365(j).

Thank you, your Honor.

THE COURT: Anything else, Ms. Lasky?

MS. LASKY: No, your Honor.

THE COURT: Whether there was an agreement or not is not the issue. There obviously was an agreement. The exemption issue is a red hearing. It has nothing to

do with the issue because a debtor can voluntarily transfer his or her exempt property, and the fact that the debtor claims it as exempt is not a relevant issue. They are not seeking or pursuing an objection to the debtor's discharge or dischargeability of the claim. All they wish to do is enforce the contract.

The problem I see with that issue is if it is an executory contract, then the contract is deemed rejected by operation of law. The test of whether it is an executory contract is whether there are obligations under both sides, the breach of which would be a material breach of the contract, the old Countrymen definition.

In this case I find that it was an executory contract. Generally a contract to sell is not necessarily an executory contract if all the debtor must do is transfer the property upon tendering of the money, but in this case, the debtor had other obligations. The debtor had an obligation to decide whether she would pay the $200,000 to the proposed purchaser or decide to transfer the property, either of which is a breach of the agreement if she did not make that decision. The purchaser had the obligation of tendering the money. It is an executory contract. That contract was terminated or rejected by operation of law under 365. Therefore, it's not enforceable. Therefore, I will deny the motion

for relief from stay.

Prepare an order, ma'am.

MS. SCHULTE:  Yes, I did, your Honor.

(Whereupon, the hearing was concluded.)

CERTIFICATE

STATE OF FLORIDA:
COUNTY  OF  DADE:

I, Anna M. Meagher, Shorthand Reporter, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on Page 1 hereof; that the foregoing computer-assisted transcription, consisting of pages numbered 1 through 18, inclusive, is a true record of my Stenographic notes taken at said proceedings.

Dated this 20th day of February 2006.

My commission expires:    _____
December 7, 2008          Anna M. Meagher, Notary Public
Commission #DD355554      State of Florida at Large

OUELLETTE & MAULDIN COURT REPORTERS, INC. (305)358-8875