

**CLOSED CIVIL CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

DWIGHT H. MATLACK and
LINDA MC VEIGH MATLACK,

Appellants,

v.

LINDA JANE GAUL,

Appellee/Debtor.

_____/

US BANKRUPTCY COURT
SO DISTRICT OF FLA

SEP 2 7 2006

FILED _____ RECEIVED _____

FILED by ____ D.C.

SEP 22 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
_____ Deputy Clerk
Date Sept 25, 2006

## ORDER

**THIS CAUSE** came before the Court upon Appellants, Dwight H. Matlack and Linda McVeigh Matlack's Appeal from the Final Order Denying the [Matlacks] Relief from Stay to Enforce State Court Settlement Against Homestead, entered by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") on December 13, 2005, in the case styled *In re Linda Jane Gaul*, Case No. 05-24079-BKC-PGH. The Court has carefully reviewed the briefs submitted by the parties, the pertinent portions of the record, and all applicable law, and heard oral argument.

Appellants have identified the following issues for the Court to consider on appeal:

1.      Did the Court below err in denying relief from stay?

2.      Did the Court below err in determining that the agreement between the parties was an executory contract?

### I. BACKGROUND

Prior to commencement of the bankruptcy proceedings, Appellants, Dwight H. Matlack and

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

Linda McVeigh Matlack, entered into a contract to purchase the home of Debtor/Appellee, Linda Jane Gaul, for the sum of $860,000. After executing the contract, however, Appellee refused to sell the home to Appellants. Appellants subsequently brought suit against Appellee in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, seeking specific performance of the contract and/or damages.[1] At an arbitration proceeding held on May 26, 2005, Appellee verbally agreed to pay $200,000 to Appellants by July 11, 2005. The settlement agreement contemplated that failure to pay the $200,000 would result in judgment being entered against Appellee in the state court action, meaning that Appellee's home would be conveyed to Appellants in exchange for the previously-agreed-upon $860,000 purchase price.[2]

On July 1, 2005, ten days before the $200,000 payment was due, Appellee commenced a

---

[1] Appellee has stated that she would not have entered into the original contract with Appellants if not for her failure to take her prescribed medications and her diminished mental capacity as a result thereof. Appellee's mental status, and any other potential defenses she may have had in the state court proceeding, are not pertinent to disposition of this matter.

[2] Specifically, at the arbitration hearing, the parties agreed as follows:

The defendant, Linda Gaul, will pay to the plaintiffs, Linda Matlack and Dwight Matlack the sum of $200,000 within 45 days.

\* \* \*

And upon receipt of that payment, [Appellants] will dismiss the lawsuit with prejudice, including the damages and specific performance counts, and exchange mutual releases. . . . And a termination of the contract [sic].

\* \* \*

[I]n the event there is a default and the $200,000 payment is not made, there will be an agreement and a stipulation that will require the award granting the specific performance count in our complaint and transferring title of the property to the plaintiffs for the purchase price of $860,000. I would say within 30 days of the default that would have to occur.

(See Motion for Relief [B.D.E. 13], Unnumbered Exhibit).

2

bankruptcy proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*. In the initial filing papers, Gaul stated that Appellants were unsecured creditors to whom she owed $200,000. She stated that the debt to Appellants was: (1) subject to setoff, (2) in dispute, and (3) contingent. (*See Voluntary Petition*, Schedule F [B.D.E. 1]). Appellee further represented that there were no executory contracts or unexpired leases outstanding. (*See id.*, Schedule G).[3]

On September 19, 2005, Appellants filed the Motion for Relief from Stay to Enforce State Court Settlement Against Homestead with the Bankruptcy Court. (*See Motion for Relief from Stay to Enforce State Court Settlement Against Homestead* [B.D.E. 13]). Appellants urged that the stay be lifted because:

> Enforcement of the settlement against the Homestead pursuant to the Arbitration Settlement will not prejudice the creditor's [sic] of the Debtor's estate since they do not have any claim against the Homestead. Furthermore the property is no longer subject to the jurisdiction of the bankruptcy court since it is "exempt." Accordingly, it would be appropriate for the parties to return to the state court and seek enforcement of the settlement[.]

(*Id.* at ¶ 7). Appellants attached copies of the real estate contract, the state court complaint and the transcript from the arbitration hearing to their motion.

Appellee opposed Appellants' motion seeking relief from the stay on the following, alternative grounds: (1) the parties had not entered into a settlement of the state court case, as the discussion at the non-binding arbitration did not constitute a "settlement" of the state claim; (2) Appellants merely held a claim against Appellee, as defined by the Bankruptcy Code, and such claim was dischargeable pursuant to 11 U.S.C. § 727; (3) even if the settlement constituted an executory

---

[3] The declarations contained in the Voluntary Petition were made under penalty of perjury.

3

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

contract, Appellee had rejected the contract, meaning that Appellants were entitled to a dischargeable claim and could only recover their $10,000 deposit; and (4) Appellants did not timely object to Appellee's homestead exemption.

The Bankruptcy Court held a hearing on the matter on November 28, 2005. In an order dated December 13, 2005 [B.D.E. 44], the Bankruptcy Judge denied Appellants' motion for relief from the stay, finding that "the State Court Settlement entered into by and between the parties constituted an executory contract, and that upon the Debtor's filing for bankruptcy, such executory contract was terminated by operation of law." (*December 13, 2005 Order*, ¶ 2). The order further held that Appellants' "claim for specific performance is hereby an obligation dischargeable by virtue of this bankruptcy case." (*See id.*, ¶ 3). This appeal followed.

## II. ANALYSIS

### A.   Standard of Review

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a). On appeal, a district court reviews a bankruptcy court's conclusions of law *de novo*. *In re Calvert*, 907 F.2d 1069, 1071 (11th Cir. 1990). A bankruptcy court's factual findings, however, may not be set aside unless they are clearly erroneous. *Id.* "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

4

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

**B.     Did the Parties Have an Executory Contract?**

The parties have primarily framed the issue before the Court as whether an executory contract existed between them. Appellants contend that, upon signing the contract to purchase Appellee's home, they became equitable owners of the home. Appellee argues that, however the initial contract may be classified, the settlement agreement was an executory contract that was rejected by operation of law. Although the parties have proceeded under the assumption that the initial contract for the sale of Appellee's property was not executory, the Court's analysis begins with an examination of the validity of that assumption. Before directly addressing the parties' contractual status, an overview of the law of executory contracts is appropriate.

**1.     Defining Executory Contracts**

There is perhaps no section of the Bankruptcy Code that has been a source of more consternation to judges, lawyers, and law students alike, than Section 365. Indeed, there has been an inordinate amount of scholarship and jurisprudence focusing upon the definition of an "executory contract," and the consequences that flow therefrom. Keeping the difficulty of the task in mind, the undersigned wades into the treacherous waters of Section 365 jurisprudence.

The Bankruptcy Code provides that, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Code, however, does not expressly define "executory contract." *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n.6 (1984).

Professor Vern Countryman has articulated the most widely cited definition of executory contract. He has defined an executory contract as an agreement where "the obligation of both the

5

bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1974). Indeed, most circuit courts, including the Eleventh Circuit, have approvingly cited Countryman's definition, at least as a starting point, in defining "executory contract." *See Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1023 (11th Cir. 1995)(citing Countryman in holding that "[e]xecutory contracts have been characterized as those with 'reciprocal remaining obligations'"); *see also In re General DataComm Industries, Inc.*, 407 F.3d 616, 627 (3d Cir. 2005); *In re Sunterra Corp.*, 361 F.3d 257, 264 (4th Cir. 2004); *Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62-63 (5th Cir. 1994); *In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir. 1989); *In re Craig*, 144 F.3d 593, 596 (8th Cir. 1998); *In re Robert L. Helms Construction & Development Co., Inc.*, 139 F.3d 702, 705 (9th Cir. 1998). Although the Supreme Court has never expressly defined "executory contract" in the context of Section 365, it has commented that "the legislative history to § 365(a) indicates that Congress intended the term to mean a contract 'on which performance is due to some extent on both sides.'" *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n.6 (1984)(citing H.R. Rep. No. 95-595, p. 347 (1977); S. Rep. No. 95-989, p. 58 (1977)).

Over time, many courts have adopted a more dynamic approach (often deemed a "functional" approach) to determine whether a contract is executory. The Eleventh Circuit has suggested that, in certain instances, the functional approach to the inquiry may be necessary:

> The key, it seems, to deciphering the meaning of [§ 365's lease-executory contract provision] is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, the [agreement] is

6

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

not [a lease or executory contract] within the meaning of the Bankruptcy Act.

*In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1439 (11th Cir. 1986)(quoting *In re Becknell & Crace Coal Co., Inc.*, 761 F.2d 319 (6th Cir. 1985)). Likewise, in a *per curiam* opinion, the Eleventh Circuit explicitly adopted a district court opinion, in which the district court held that *"[e]ven though there may be material obligations outstanding on the part of only one of the parties to the contract, it may nevertheless be deemed executory under the functional approach if its assumptional rejection would ultimately benefit the estate and its creditors." In re General Development Corp.*, 84 F.3d 1364, 1374 (11th Cir. 1996)(emphasis in original)(quoting *In re Arrow Air, Inc.*, 60 B.R. 117, 121-22 (Bankr. S.D. Fla. 1986)).[4] The functional approach essentially takes the Countryman definition of executory contract as a starting point, but recognizes that there may be instances where unexamined application of the definition yields undesired/unintended consequences. *See In re Riodizio, Inc.*, 204 B.R. 417, 422 (Bankr. S.D.N.Y. 1997)(citing *In re G-N Partners*, 48 B.R. 462, 466 (Bankr. D. Minn.1985)("The functional approach does not repudiate the Countryman rule; it merely recognizes its limitations.")).

2.    Real Estate Contracts

If defining executory contracts has caused problems, generally, the problems have only been exacerbated in the context of real estate contracts. The law owes much of its current state to a trilogy of cases decided more than 50 years ago. In the first case, *In re New York Investors Mut. Group, Inc.*, 143 F. Supp. 51 (S.D.N.Y. 1956), the court was required to discern the rights that a non-debtor vendee had vis-à-vis a debtor-vendor, where the vendee had paid a portion of the purchase price but

---

[4] The Eleventh Circuit affirmed the district court order and appended the order to its summary affirmance.

7

had not yet received the deed of title at the time the debtor was declared bankrupt. The court

answered the question, almost identical to the one before the Court, as follows:

> [T]he vendee's position, which would make this principle inapplicable in the case of executory real property contracts, cannot be upheld – that on the contrary, whatever rights the vendee might have acquired under New York law as an equitable owner of the property, absent an instrument of conveyance, were subject to the right of the trustee to reject or assume executory contracts so as to achieve the overriding purpose of the bankruptcy law to secure an equitable distribution of the assets of the bankrupt. The vendee's equitable title, so long as it remained such, was subject in the event of the vendor's bankruptcy before delivery of the deed to the statutory power of rejection by the trustee. No logical reason exists why a trustee should be free to divest himself of an onerous contract of personalty and yet be compelled to carry the burdens of an undesirable realty contract. Neither the language of the Section nor anything in its legislative history suggests that Congress intended to exclude executory contracts for the purchase or sale of real property from the power granted to a trustee. The unambiguous language of the Section affords no basis to support the view that such contracts were placed in a separate category and were not intended to come within the purview of the statute.
>
> The remedy of the vendee upon disaffirmance by the trustee is a claim for damages for breach of the agreement.

*Id.* at 54 (footnotes omitted).

The First and Third Circuits came to similar conclusions in cases decided in the early 1960s.

*See Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257 (1st Cir. 1963)(contract for sale of real estate was

executory and could be rejected; vendee had status of general unsecured creditor with respect to

payments made that were no longer in escrow and could not be traced from escrow account); *In re*

*Philadelphia Penn Worsted Co.*, 278 F.2d 661, 664 (3d Cir. 1960)(citing *New York Investors* for

proposition that "doctrine of equitable conversion does not operate to make the vendee's right as an

equitable owner superior to the right of a trustee").

In response to concern over the implications of the decisions on vendees who had already

8

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

furnished part of the purchase price, in enacting the Bankruptcy Code, Congress passed Section

365(j) (and 365(i)).[5] *See In re McDaniel*, 89 B.R. 861, 873 (Bankr. E.D. Wash. 1988)(citing *In re*

*Booth*, 19 B.R. 53 (Bankr. D. Utah 1982)). The provision states, in relevant part, that "a party whose

executory contract to purchase real property from the debtor is rejected and under which such party

is not in possession, has a lien on the interest of the debtor in such property for the recovery of any

portion of the purchase price that such purchaser or party has paid." 11 U.S.C. § 365(j).

Cases decided after the enactment of the Bankruptcy Code have generally agreed with the

trilogy of cases cited, finding that contracts for the sale of real estate may be rejected and that non-

debtor vendees are only entitled to an unsecured claim on the bankruptcy estate (down payment

aside).[6] *See In re Alexander*, 670 F.2d 885 (9th Cir. 1982)(debtor's deposit receipt sales contract to

sell her home was executory notwithstanding non-debtor vendee's tender of full performance); *In*

*re Nickels Midway Pier, LLC*, 341 B.R. 486 (D.N.J. 2006)(treating contract for sale of land as

executory); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85 (Bankr. S.D.N.Y. 2005)(finding that contract

for sale of real estate was executory and explicitly rejecting argument that contract could not be

rejected because under New York law a purchaser of real estate is considered the equitable owner

of the property); *In re Brundage*, No. 05-Civ-2310, 2005 WL 2206076, at *3 (E.D. Pa. 2005)("It is

well-established that, in Pennsylvania, equitable conversion does not operate to make the equitable

title holder's rights superior to that of a bankruptcy trustee's to reject an executory contract."); *In re*

---

[5] *New York Investors, Gulf Petroleum* and *Philadelphia Penn Worsted* were all decided under the Bankruptcy Act.

[6] Purchasers are also entitled to a lien in the amount of any payments tendered towards the purchase price. *See* 11 U.S.C. § 365(j).

9

*Young*, 214 B.R. 905, 910 (Bankr. D. Idaho 1997)(land sale contract was executory as buyer " had yet to pay the purchase price, and [sellers] had yet to transfer title or give up possession of the property"); *In re Sundial Asphalt Co., Inc.*, 147 B.R. 72, 83 (E.D.N.Y. 1992)("Most courts have held that a land sale contract is executory when the debtor-vendor has not yet conveyed or been ordered to convey title.")(citations omitted).

There are generally two categories of cases in which courts have found contracts for the sale of real estate not to be executory. The first category involves cases where the underlying contract is a real estate installment sales contract. Courts have often treated such contracts as security agreements and concluded that they were not executory. *See, e.g., In re Streets & Beard Farm Partnership*, 882 F.2d 233 (7th Cir. 1989); *Heartline Farms, Inc. v. Daly*, 128 B.R. 246 (D. Neb. 1990); *In re Booth*, 19 B.R. 53 (Bankr. D. Utah 1982).[7]

In the second category of cases, courts have found that where a vendee has obtained a state court judgment for specific performance prior to the debtor's bankruptcy, the contract is not executory because the debtor has no further material obligations to perform. *See Kendall Grove Joint Venture v. Martinez-Esteve*, 59 B.R. 407, 409 (S.D. Fla. 1986)(finding that Florida law mandated that specific performance decree entered against debtor was considered duly executed when the judgment was recorded and there were thus "no 'future obligations' for the debtor . . . to perform"); *In re Pribonic*, 70 B.R. 596 (Bankr. W.D. Pa. 1987); *In re Meeham*, 59 B.R. 380, 386 (E.D.N.Y. 1986)(stating, in dictum, that state court award of specific performance might be deemed

---

[7] There is, however, no consensus as to the proper treatment that should be afforded to real estate installment contracts. *See, e.g., In re Streets & Beard Farm Partnership*, 882 F.2d at 234-35 (listing cases that reached a contrary conclusion).

10

to "execute" the contract).[8]

### 3.    Law Within this Circuit

Of course, while the holdings of other courts represent persuasive authority, the only intermediate appellate court that binds this Court is the Eleventh Circuit. Although the Eleventh Circuit has not yet addressed the precise issue involved in the present case, its holding in *In re General Development Corp.*, 84 F.3d 1364 (11th Cir. 1996), is both relevant and instructive.

In *In re General Development Corp.*, the debtor, a construction company, entered into a land installment sales contract with non-debtor vendees in 1972. *Id.* at 1366. The agreement provided that the debtor would deliver a warranty deed to the vendees once the purchaser had completed all monthly payments. *Id.* Although the purchasers made all payments, the debtor subsequently filed for bankruptcy. *See id.* Pursuant to a plan of reorganization, all vendees were given a chance to have their contracts transferred to a developed lot of land; an opportunity that was declined by the vendees in question. *See id.* Under a confirmation plan, all purchasers were given a secured claim with respect to their lien rights under § 365(j) and an unsecured claim with respect to certain payments not covered by Section 365(j). *Id.* Unsatisfied with the result, the vendees sought specific performance of the original contract.

The court ultimately held that the "homesite purchase agreement was indeed a contract to convey real property which GDC, as a debtor/seller, was entitled to reject as an executory contract

---

[8] As is typical with many issues in the executory contract realm, there exists a lack of consensus concerning the effect of a state court order of specific performance on the executory nature of the underlying land contract. Indeed, one bankruptcy court in Florida has specifically called the validity of the *Kendall Grove* decision into question. *See In re Kelley*, No. 01 27345-BKC-RBR, 2001 WL 34706484, at *4 (Bankr. S.D. Fla. Nov. 29, 2001)("it is questionable whether *Kendall Grove* . . . retains any precedential value").

11

pursuant to Section 365(a) of the Bankruptcy Code." *Id.* at 1375. It justified its decision as follows:

> The legislative history of § 365 and the statute itself, establish that it is not always the case that there must be outstanding obligation on the part of both parties to a contract in order for a contract to be deemed executory . . . The express language of § 365 reflects that congress did not adopt a specific definition of an "executory contract" which would require mutual obligations, in spite of its clear opportunity to do so. Legislative history for that section evidences that congress considered mutual obligation to be indicative of an executory contract in some [sit], but not all, cases **. . . Even though there may be material obligations outstanding on the part of only one of the parties to the contract, it may nevertheless be deemed executory under the functional approach if its assumptional rejection would ultimately benefit the estate and its creditors. (emphasis added)** *In re Arrow Air, Inc.*, 60 B.R. 117, 121-22 (Bankr. S.D. Fla. 1986). . .
>
> In the instant case, GDC's ability to reject homesite purchase agreements which obligated it to improve and deed developed homesite lots to tens of thousands of lot purchasers, when it was simply financially unable to fill such contractual obligations, was critical to GDC's reorganization. The very purpose of rejection, as even recognized by Professor Countryman, was thus served in the instant case by GDC's ability to reject such homesite purchase agreements.

*Id.* at 1374 (bold text in original).

The present appeal differs from *General Development Corp.* in two important respects. First, Appellants have not tendered full payment for the property, whereas the purchasers in *General Development Corp.* had purchased the real estate in full, a factor suggesting that the purchasers' interest in the property in *General Development Corp.* was greater than is Appellants' interest here. Second, in *General Development Corp.* the debtor's ability to reorganize was based upon its ability to reject the sales contracts. No similar consideration is at issue here.

4.    Appellants' Arguments

Having laid out an overview of the relevant legal landscape, the undersigned turns to an analysis of Appellants' specific arguments.

12

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

a.      *The contract is executory notwithstanding Appellants' argument that they are equitable owners of the property in question.*

Appellants argue that, as vendees under a valid real estate contract, they are equitable owners of Appellee's home and, therefore, Appellee was not entitled to reject the underlying sales contract (or any modification thereto). Alternatively stated, Appellants contend that because they owned the property at the time of Appellee's bankruptcy filing, the property could not become part of the bankruptcy estate and any action that deprived Appellants of their property interest (*i.e.*, rejection of the land contract) was impermissible. The undersigned disagrees.

Notwithstanding any labels that Appellants may place upon their relationship to the property, it is clear that each party had material obligations to perform. Appellants had to furnish the full purchase price of the home to Appellee, and Appellee had to deliver possession of, and legal title to, the property to Appellants. Under Florida law, if either party failed to perform its obligations, the other party would have been entitled to sue for breach of contract. *See In re Riodizio, Inc.*, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997)("if applicable non-bankruptcy law permits either party to sue for breach because of the other party's failure to perform, the contract is executory")(citation omitted). If Appellants failed to purchase Appellee's home, Appellee could have prosecuted a breach of contract suit against Appellants. *See Rocha v. Wolfson*, 612 So.2d 700 (Fla. 3d DCA 1993). Likewise, Appellants had the ability to maintain a suit for breach of contract if Appellee refused to sell her home (as evidenced by the state court suit). Moreover, there can be no legitimate dispute that if either of the parties materially breached the settlement agreement (*i.e.*, Appellee did not pay the $200,000 or Appellants failed to dismiss their suit), performance of the other party would be excused.

13

Appellants rely upon *Tingle v. Hornsby*, 111 So. 2d 274 (Fla. 1st DCA 1959), and *In re Section 20 Land Group, Ltd.*, 261 B.R. 718 (Bankr. M.D. Fla. 2000),[9] to support their argument that they are the equitable owners of Appellee's home and that the contract is thus not executory. *Hornsby* found that:

> It has long been the law of this jurisdiction that the vendor's act in executing a contract to convey the legal title to property upon the payment of an agreed purchase price constitutes the vendee as the real beneficial owner, legal title remaining in the vendor as trustee with the obligation to convey upon compliance with the terms of the contract.

*Hornsby*, 111 So. 2d at 276. It is important, however, to look beyond the mere "equitable owner" label in order to appreciate the practical consequences that flow from the label. Alternatively stated, while labeling vendees as equitable owners may be useful in describing certain rights of the parties to a real estate contract, the mere label is not dispositive in deciding the question currently before the Court.

In *Hornsby*, for example, the court described the property purchasers as equitable owners to support its conclusion that, after executing the contract, the vendor's interest in the property became personalty. Likewise, *Aycock Bros. Lbr. Co. v. First National Bank of Dothan*, 54 Fla. 604, 618-19 (Fla. 1907), upon which *Hornsby* relied, cited the doctrine in support of "the vendor's right to enforce payment of the price by a suit in equity against the vendee's equitable estate in the land,

---

[9] Appellants' reliance upon *Section 20* is misplaced. *Section 20* resolved whether a party who had contracted to purchase land from the debtor was entitled to an administrative claim for the costs of its due diligence where the sale never took place. The court ultimately did not find that there was a contract between the parties that the debtor had refused to consummate *Section 20*, 261 B.R. at 720. Importantly, the court also refused to hold that even if there was a contract, the purchaser would have been entitled to specific performance on the land contract. *See id.* Finally, although the court listed cases in which Florida courts applied the doctrine of equitable conversion to real estate purchasers, the *Section 20* court did not engage in any discussion pertaining to the applicability of such cases to the issues presented here.

14

instead of by means of an ordinary action at law to recover the debt." A survey of Florida case law demonstrates that the "equitable owner" label represents nothing more than a useful tool to describe certain rights of the parties. *See, e.g., In re Sweet's Estate*, 254 So.2d 562 (Fla. 2d DCA 1971)(after executing real property contract, "the vendor's interest is considered personalty and passes accordingly upon the vendor's death"); *Arko Enterprises, Inc. v. Wood*, 185 So.2d 734 (Fla. 1st DCA 1966)(executory contract for sale of land not rescinded where land was condemned by eminent domain); *Buck v. McNab*, 139 So.2d 734, 737 (Fla. 2d DCA 1962)("the interest of the vendee under the contract is regarded as realty so that he will be entitled to all benefits attaching to the property and . . . he must bear all losses").

The danger of relying upon Appellants' position that they are the "equitable owners" of the property in question, in resolving the issue presented, is demonstrated by the holding of *In re Estate of Skuro*, 467 So. 2d 1098 (Fla. 4th DCA 1985)(Barkett, J.). In *Skuro*, a contract was entered into between two parties. Before the contract was performed, the vendor died. *Id.* at 1098. It was undisputed that prior to execution of the contract, the property was the vendor's homestead. *Id.* The vendees argued that "the homestead status of the property was destroyed by the execution of the contract for sale as a result of the doctrine of equitable conversion." *Id.* The court ultimately held "that the common law doctrine of equitable conversion should not apply to alter the constitutionally provided homestead status of property." *Id.* at 1100.

The undersigned does not suggest that the holding in *Skuro* has any direct bearing upon the "equitable ownership" issue presented in this appeal. However, *Skuro* illustrates the importance of analyzing Appellants' equitable ownership claim in the context of the specific right that they wish

15

to assert.

Although it was applying Michigan law, the Court finds the following Sixth Circuit analysis

of the issue persuasive:

> The Terrells and the court in *Britton* [*In re Britton*, 43 B.R. 605 (Bankr E.D. Mich. 1984)] misunderstand the significance of the statements in these Michigan cases. As this Court explained in *National Bank of Kentucky v. Louisville Trust Co.*, 67 F.2d 97, 100 (6th Cir. 1933) (citation omitted in original), *cert. denied*, 291 U.S. 665, 54 S. Ct. 440, 78 L.Ed. 1056 (1934), statements concerning the equitable or legal nature of a vendee's or vendor's interest "are only incidents of or necessary consequences of the right to specific performance, and in seeking to give a simple and easily understood reason for them, courts have frequently said that the vendor 'holds the legal title to the real estate in trust for the vendee and as security for the payment of the agreed consideration.'" *Such statements do not change the reality of Michigan law. Under a land sale contract, unlike most mortgages, "performance remains due to some extent on both sides" and the failure of either party to fulfill his or her obligations would excuse the other from continued performance.*

*In re Terrell*, 892 F.2d 469, 473 (6th Cir. 1989)(emphasis added).  As already observed, there is

substantial authority rejecting the equitable ownership argument asserted by Appellants.  *See, e.g.,*

*In re New York Investors Mut. Group, Inc.*, 143 F. Supp. 51 (S.D.N.Y. 1956); *In re Philadelphia*

*Penn Worsted Co.*, 278 F.2d 661 (3d Cir. 1960); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85 (Bankr.

S.D.N.Y. 2005).

The conclusion that the contract was executory is further buttressed by the language of 11

U.S.C. § 365(j). Section 365(j) provides, in relevant part, that "a party whose executory contract to

purchase real property from the debtor is rejected and under which such party is not in possession,

has a lien on the interest of the debtor in such property for the recovery of any portion of the

purchase price that such purchaser or party has paid." 11 U.S.C. § 365(j).  As noted, the law was

apparently enacted to express congressional displeasure with courts' treatment of down payments

16

in the context of land contracts. *In re Booth*, 19 B.R. at 55.

Although the provision may not *mandate* that all contracts for the sale of real estate be treated as executory, at a minimum, it recognizes Congress' implicit approval of courts' treatment of some real estate contracts as executory. While the undersigned is loathe to construe congressional inaction as approval of judicial interpretations, if Congress had been displeased with the general interpretation of real estate contracts as executory, it certainly could have addressed more than the manner in which down payments are treated. *See In re Balco Equities Ltd., Inc.*, 323 B.R. at 100 ("Section 365 specifically contemplates that executory contracts for the sale of real property can normally be rejected unless the purchaser is in possession. Section 365 could have been drafted to state that contracts for sale of real estate cannot be rejected where state law would not permit it under, *e.g.*, a theory of equitable conversion; but this is not what Section 365 says.")

Finally, and most importantly, rejection of Appellants' argument is supported, if not compelled, by the Eleventh Circuit's decision in *General Development Corp.*, 84 F.3d at 1364. The pertinent facts of the case have been outlined and will not be repeated here. In *General Development Corp.*, the real estate vendees argued that "their equitable lien or interest in the [p]roperty was not extinguished by the bankruptcy because the Homesite Purchase Agreement was not an executory contract subject to rejection." *Id.* at 1370. Although the court did not specifically address the argument, the argument was implicitly rejected, given that the court found the land installment contract to be executory (and specific performance to be unavailable).

Accordingly, the Court rejects Appellants' argument that their "equitable ownership" of the

17

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

property precluded Appellee from rejecting the underlying contract.[10]

### b.        Effect of Homestead Exemption

A further wrinkle is added to the Court's analysis as the property in question is exempt property under Florida's homestead exemption.[11] Accordingly, Appellants argue that the contract is not executory because rejection of the contract would not produce any benefit to the bankruptcy estate. Technically speaking, Appellants are correct.

Rejection of the contract would result in Appellee ridding herself of a burdensome contract. As a result, Appellants have an unsecured claim in the estate. In most instances, the benefits that accrue from a debtor's ability to alleviate itself of a burdensome contract will be shared by all claimants to the estate (i.e., all creditors would benefit from the loss suffered by Appellants). However, because Appellee's home is exempt property, the rejection results in another claim upon the non-exempt assets of the estate without the corresponding benefits that would typically be realized from the increased proceeds from the sale of the property. The undersigned remains unpersuaded by Appellants' arguments.

In support of their argument, Appellants cite to the Eleventh Circuit's statement in *General Development Corp.* that "the question of whether a contract is executory is determined by the

---

[10] The undersigned is aware of, and remains unpersuaded by, the recent ruling in *In re Douglas G. Zeif*, Case No. 05-33083-BKC-SHF. Appellants provided the Court with a copy of the Final Judgment on Counts III, IV, and V (*see* [D.E. 12]), in which the court held, in part, that "[t]he executed and delivered Contract [for real property] is not executory, and cannot be rejected."

[11] The Bankruptcy Code permits a debtor to select between a list of federal exemptions and exemptions provided by his or her state. *See* 11 U.S.C. § 522(b). Under Florida law, homestead property is exempt from forced sale "and no judgment, decree or execution shall be a lien thereon." Fla. Const., Art. 10, § 4(a). In Bankruptcy Court, Appellee listed her home as exempt property and no party objected.

18

benefits that assumption or rejection would produce for the estate." *General Development Corp.* 84 F.3d at 1375. The *General Development Corp.* court ultimately held that the real estate contracts were executory because the ability to reject the contracts aided in the debtor's reorganization.

Appellants, however, ignore the Eleventh Circuit's later statement that the "key . . . to deciphering the meaning of [the Section 365 executory contract provision] is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish." *Id.* (citations omitted). Appellants, too, ignore that one of the primary goals of Chapter 7 is to afford the individual debtor with a fresh start. *See In re Chauncey*, 454 F.3d 1292, 1295 (11th Cir. 2006)("debtor's fresh start is the primary objective of bankruptcy law"); *In re Chambers*, 348 F.3d 650, 653 (7th Cir. 2003)("The primary purpose of bankruptcy discharge is to provide debtors with a fresh start."); *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1203 (9th Cir. 2005)(listing goal of Chapter 7 as "giving the individual debtor a fresh start, by giving him a discharge of most of his debts"); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991)(quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934))("central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'").

There are several competing, and sometimes conflicting policies espoused by the Bankruptcy Code. Where a corporation files for bankruptcy, as in *General Development Corp.*, the primary goal is to maximize the value of the estate for the benefit of the creditors and all other stakeholders. Where an individual files for Chapter 7, however, the Bankruptcy Code also seeks to promote the

19

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

goal of providing a fresh start to the debtor. To facilitate the fresh start, individual debtors are permitted to exempt certain assets from the bankruptcy estate.

The undersigned does not interpret *General Development Corp.*'s functional approach to mean that a contract is only executory when rejection of the contract would result in an increased payout to creditors. Instead, the proper question is whether rejection of the contract by an individual debtor would result in the ability to shed a burdensome contract. Whether the benefits of rejection inure to the debtor or to other creditors results from a policy choice made by Congress.[12] Such congressional choices do not bear upon the determination of whether a contract is executory in the first instance.

## B.    The Bankruptcy Court Opinion was not an Improper Advisory Opinion.

Appellants also argue that the Bankruptcy Court issued an improper advisory opinion. The basis for Appellants' argument is not entirely clear. Appellants object to the Bankruptcy Court's finding that their "claim for specific performance is hereby an obligation dischargeable by virtue of this bankruptcy case." (*December 13, 2005 Order*, ¶ 3). They apparently assign error to both the substantive and procedural grounds for the Bankruptcy Court's determination.

Beginning with the procedural argument, Appellants argue that a person who seeks a determination of the dischargeability of a debt must do so through an adversary proceeding. Pursuant to 11 U.S.C. § 727, courts, with certain exceptions, must grant debtors a discharge. 11 U.S.C. § 727(a). A discharge "discharges the debtor from all debts that arose before"

---

[12] Appellants' proposed interpretation would result in a scheme whereby the same sales contract would be treated differently depending upon whether it was for the sale of exempt, as opposed to non-exempt, property.

20

commencement of the bankruptcy proceeding. 11 U.S.C. § 727(b). Section 727 further provides that certain enumerated debts are not dischargeable. *See* 11 U.S.C. §§ 727(b), 523. However, all other debts are dischargeable as a matter of law. *See id.*

Rule 7001(6), Fed. R. Bank. P., to which Appellants cite in support of their argument, merely states that "a proceeding to determine the dischargeability of a debt" is an adversary proceeding. In other words, the provision allows a party to institute an adversary proceeding to determine the dischargeability of a debt. It does not suggest that an adversary proceeding *is required* to determine whether each claim against a debtor is dischargeable. In short, Appellants' motion required the Bankruptcy Judge to determine whether to lift the stay so that Appellants could seek specific performance of the real estate contract. That the debt was dischargeable, and that specific performance was not available, were findings that the Bankruptcy Court made to explain its refusal to lift the stay.

Turning to the substantive arguments, Appellants apparently insist that because their right to specific performance is not a claim, it is not dischargeable under the Bankruptcy Code.[13] Pursuant to 11 U.S.C. § 502(g), the Bankruptcy Court may allow any "claim" arising from the rejection of an executory contract under Section 365. Thus, it stands to reason that, to the extent that rejection does not give rise to a "claim," the Bankruptcy Court committed error in finding that Appellee's debt (Appellants' right to specific performance) was dischargeable.

The Bankruptcy Code defines a claim, in part, as the "right to an equitable remedy for breach

---

[13] For better or worse, courts have often treated the question of whether a contract is executory in tandem with the question of whether the non-debtor is entitled to specific performance. Indeed, the finding that a contract is executory is largely academic if rejection of the contract nevertheless gives rise to a right to specific performance.

21

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). Under Florida law, a vendor's breach of a real estate contract gives rise to alternative remedies: (1) the purchaser party may elect to sue in an action at law for damages suffered as a result of the breach; or (2) the purchaser may elect to sue in equity to compel specific performance of the terms of the contract. *Miller v. Rolfe*, 97 So. 2d 132 (Fla. 1st DCA 1957). As breach of the real estate contract clearly gave rise to a right to payment under Florida law, Appellants held a claim that was properly deemed dischargeable by the Bankruptcy Court.[14] *See Nickels Midway*, 341 B.R. at 500 (finding that breach of real estate contract gives rise to a claim that is dischargeable, notwithstanding New Jersey's presumption in favor of specific performance for breach of land contracts)(citing *In re Young*, 214 B.R. at 912; *In re A.J. Lane & Co., Inc.*, 115 B.R. 738, 742 (Bankr. D. Mass. 1990)).

The remedy available for breach of the settlement agreement presents a more interesting question.[15] As noted, the settlement agreement provided that Appellee was to pay $200,000 to Appellants in exchange for termination of the contract and dismissal of the state suit. However, failure to pay the $200,000 would result in a "stipulation that [would] require the award granting the

---

[14] In support of their Argument, Appellants cite to Fla. R. Civ. P. 1.579(c) and (d). Appellants appear to be referring to Rule 1.570, which references the procedures by which final judgments are enforced. It is unclear as to how the Rule has any bearing upon this case, other than to demonstrate that Florida permits final judgments for specific performance under certain circumstances.

[15] This Order primarily focuses upon the underlying real estate contract, as most of Appellants' arguments are directed to the consequences of the parties' initial contract. Here, however, the undersigned finds it necessary to distinguish between the two contracts. The Court's analysis does not require a determination of the effect of the settlement agreement on the land contract (*i.e.*, whether it modified the land contract, rescinded it, etc.).

22

specific performance count in [Appellants'] complaint and transferring title of the property to the plaintiffs for the purchase price of $860,000." (*Motion for Relief* [B.D.E. 13], Unnumbered Exhibit). Thus, there is a colorable argument that the sole remedy available if Appellee refused to pay the $200,000 was specific performance of the real estate contract.

While the settlement agreement clearly contemplated that Appellants would receive specific performance if Appellee did not tender the $200,000, specific performance was not the only remedy available to Appellants. If Appellee failed to pay, the real estate contract would have remained in full force. Appellants could have still sought damages under the contract (as they did in the first place). Accordingly, the breach would have given rise "to a right to payment." 11 U.S.C. § 101(5). That Appellants would not have chosen to exercise their right to payment is of no consequence.

The Supreme Court has cited the congressional policy behind Section 101(5)(b), stating that the provision

> is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11."

*Ohio v. Kovacs*, 469 U.S. 274, 280 (1985)(citing 124 Cong. Rec. 32393 (1978)(remarks of Rep. Edwards))(citation omitted). Because Appellants had a right to payment arising from Appellee's breach, Appellants' claim was properly characterized as dischargeable in bankruptcy.

## C.   The Bankruptcy Court Did Not Abuse its Discretion in Refusing to Apply the Doctrine of Judicial Estoppel.

In the schedules attached to her Voluntary Petition, Appellee claimed that she was not a party

23

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

to any executory contracts or unexpired leases. (*Voluntary Petition*, Ex. G). However, she listed a $200,000 breach of contract claim held by Appellants as an unsecured nonpriority claim. (*Id.*, Ex. F).[16] Appellants maintain that Appellee ultimately reversed course, successfully arguing that Appellants and Appellee were parties to an executory contract in defeating Appellants' motion for relief from the stay. Appellants argue that, given her earlier representations, Appellee should have been judicially estopped from later arguing that the contract was executory.

Judicial estoppel is an equitable doctrine invoked at a court's discretion. *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1343-44 (11th Cir. 2006)(citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Accordingly, a court's application of judicial estoppel is reviewed for abuse of discretion. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002)(citation omitted). "Under [the] doctrine of judicial estoppel, a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Ajaka*, 453 F.3d at 1344 (quoting *Burnes*, 291 F.3d at 1285 (11th Cir. 2002)). The doctrine is intended to be a flexible rule in which courts should take into account all of the particulars of a case in determining its applicability. *Id.* (citing *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1307 n.17 (11th Cir. 2005)).

In determining whether to apply the doctrine of judicial estoppel, courts should consider (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and

---

[16] The claim was listed as contingent, in dispute and subject to setoff.

24

(3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Burnes*, 1291 F.3d at 1285 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

A careful review of the record and the relevant factors does not demonstrate that the Bankruptcy Court abused its discretion in refusing to invoke the doctrine of judicial estoppel. Specifically, failing to report the contract as an executory contract may be fairly characterized as a legal error of Appellee. As such, Appellee's subsequent argument that the agreement between the parties was in fact an "executory contract," and not a debt, was not "clearly inconsistent" with her earlier position. Moreover, there is no evidence that Appellee initially succeeded in convincing the Bankruptcy Court or other interested parties that the contract was not executory.

Finally, the Court does not find that Appellee derived any unfair advantage from her misrepresentation/omission. The Bankruptcy Court based its refusal to lift the stay upon the legal conclusion that there was an executory contract between the parties, a conclusion that this Court has affirmed (albeit, on slightly different grounds). Appellee's initial characterization of the contract had no bearing upon the ultimate legal conclusion that the contract was executory.

Appellants argue that Appellee concealed that the contract was executory until after the time to file an objection to her claimed homestead exemption had expired. Conspicuously absent from the briefs filed, and from the record before the Bankruptcy Court, is any indication of a meritorious basis for objecting to Appellee's homestead claim. Certainly, based on the record, the Bankruptcy Judge was well within its discretion to determine that even if the contract had been properly characterized in Appellee's voluntary petition, there would have been no resulting material change

25

CASE NO. 06-60299-CIV-ALTONAGA/Turnoff

in the parties' positions. Moreover, Appellants are the parties least able to claim prejudice from the omission/misrepresentation, as they were parties to the contract and should have recognized that there was *at least a possibility* that the contract was executory.

Under the circumstances, the undersigned does not find that the Bankruptcy Judge abused its discretion.

### D.    Appellants' Bad Faith Argument was Waived.

In their final argument, Appellants maintain that Appellee's bankruptcy case was filed in bad faith. Appellants, however, did not raise the argument with the Bankruptcy Court. Accordingly, the argument is waived and will not be considered on appeal. *See Chapman v. AI Transport*, 229 F.3d 1012, 1044 (11th Cir. 2000)("It is axiomatic that an argument not raised before the trial court or on appeal has been waived.")(citations omitted).

### III. CONCLUSION

For the reasons stated, it is **ORDERED AND ADJUDGED** that the Final Order Denying the [Matlacks] Relief from Stay to Enforce State Court Settlement Against Homestead, entered by the United States Bankruptcy Court for the Southern District of Florida, is **AFFIRMED**. The Clerk of the Court is instructed to **CLOSE** the case and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this *22* day of September, 2006.

CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

Copies provided to:
Hon. Paul Hyman

26

CASE NO.  06-60299-CIV-ALTONAGA/Turnoff

Magistrate Judge William C. Turnoff
counsel of record

27